313 So.2d 16 (1975)
James Edward THORNTON
v.
STATE of Mississippi.
No. 48370.
Supreme Court of Mississippi.
May 19, 1975.
Swep S. Taylor, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen., by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, ROBERTSON and SUGG, JJ.
ROBERTSON, Justice.
James Edward Thornton was indicted, tried and convicted in the Circuit Court of the First Judicial District of Hinds County, of the crime of rape. He was sentenced to life imprisonment in the state penitentiary. From his conviction and sentence, Thornton appeals.
The prosecutrix shared an apartment with a fellow woman student at 803 Belhaven Street, Jackson, Mississippi. The prosecutrix was a student at Millsaps College and a practice teacher at Bailey Junior High School. The prosecutrix and her roommate had studied until 11:50 P.M. on January 30, 1973, when her roommate left to spend the night with her friend in the adjoining apartment.
The prosecutrix took a bath, put on her nightgown, and went to bed. She turned off all the lights in the apartment except the ceiling light in the living room. There had been hung over the light a thin cotton tapestry which made the light more subdued and less harsh. She heard a sound and went from the bedroom, through the living room, and into the kitchen to lock the back door.
Returning to her bed, she couldn't go to sleep. A little later she again heard noises coming from the kitchen and got up. She walked from the bedroom into the living room and turned to go into the kitchen. A man jumped out of the kitchen shadows and threw a coat over her head. She started screaming and her assailant tightened the coat over her head and over her mouth, and told her that he would kill her if she were not quiet. She testified that she was very much afraid, could hardly breathe through the coat and hand over her mouth, and she did quit screaming. Her assailant half-dragged and half-carried her back into the bedroom, forced her down on the bed, and raped her.
Just before he put a pillow over her face, she got a profile view of his face. After the attack, her assailant fled by way of the back door to the apartment.
At the trial, the prosecutrix gave a definite and positive description of her assailant, described the clothes that he was *17 wearing and positively and unequivocally identified the appellant as the man who had attacked her. She stated that she had gotten a good view of her assailant as the ceiling light in the living room shone over her shoulder and full in his face just before he threw his coat over her head; she had also gotten a good profile view just before he attacked her. She picked his picture out of a stack of pictures exhibited to her, and she picked him out of a lineup on February 1, 1973, the day after the attack on her.
She identified a coat, taken from the home of the defendant and introduced at the trial, as being identical to the one thrown over her head. She also identified a pair of trousers, taken from his home and introduced at the trial, as being of the same type and texture as the ones worn by her assailant the night she was assaulted.
Dr. Tom S. Cooper testified that he examined the prosecutrix at 2:45 A.M. on January 31, 1973, and that there had been sexual intercourse shortly before his examination.
Lanny King testified that he lived on Arlington Street one block north of, and closer to North State Street than, 803 Belhaven Street. King testified that between 1:15 and 1:30 A.M. on January 31, 1973, he saw a black male of the same height and build as the appellant walking in front of his house on Arlington Street toward North State Street. He identified a coat as being identical with the one worn by the man that he saw walking. At the trial when appellant put on the coat, King testified that he looked like the same person that he saw that night about 1:20 A.M.
Officer Lansdale of the Jackson Police Department was on patrol in the early morning hours of January 31, 1973. As he proceeded north on North State Street, a 1963 Chevrolet two-door hardtop, with a white top over red body, proceeded slowly into North State Street from Arlington Street directly in front of Lansdale's headlights. It was about 1:25 A.M. and a black male was driving. Lansdale positively identified the defendant's automobile as being the one he saw proceeding from Arlington Street into North State Street about 1:25 A.M., January 31, 1973.
Officer Tompkins of the Jackson Police Department was also on patrol the night of January 31, 1973. Shortly after he had received a call to report to 803 Belhaven Street, he proceed easterly on Fortification Street and stopped at the stop light at the intersection of North West and Fortification Streets, about 1:30 A.M. He saw a 1963 Chevrolet two-door hardtop, white-over-red, proceeding south on North West Street, and this car turned west on Fortification Street, coming within 10 feet of Tompkins' patrol car. He observed that the black male driving was the only occupant. At the trial, he also positively identified the defendant's car as the car that he saw about 1:30 A.M., January 31, 1973.
Defendant lived at 1122 Maderia Avenue, and the route that the white-over-red Chevrolet was traveling that night was the logical route from the prosecutrix's apartment to 1122 Maderia.
Officer Crisco of the Jackson Police Department testified that he obtained a search warrant on February 1, 1973, for 1122 Maderia Avenue, and that he took a man's three-quarter-length coat and a pair of tan pants from the house at that address. This was the coat and the pair of trousers introduced as exhibits and identified as the clothing worn by the defendant the night of January 31st.
Officer Ates, criminalist with the Jackson Police Laboratory, testified that a pair of the defendant's shorts examined by him were stained with male seminal fluid mixed with human blood. Ates also found traces of male seminal fluid on the nightgown worn by prosecutrix the night of January 31st.
Defendant offered an alibi defense. He testified that after a date with his girl friend he returned to his home at 1122 Maderia Avenue about 11:00 P.M. on January 30, 1973, and did not leave the house *18 again that night. His mother testified to the same effect, as did her male friend, George Jones, who was staying with Hattie Thornton that night. Jones testified that when he got up about 12:45 A.M. and went from the back bedroom to the living room to turn off the TV which was frying, he observed the defendant asleep on the couch.
The appellant contends that the trial court erred in overruling his motion for a peremptory instruction, that the guilty verdict is not supported by the evidence, and that the evidence placing the defendant at the scene of the crime at the time it was committed was not sufficient to support his conviction. Appellant also assigns as error the cross-examination of the defendant by the district attorney as to his record of prior convictions.
The facts being in dispute, it was the duty and responsibility of the jury to decide which witnesses to believe, and how much of each witness's testimony to believe, and what weight should be given to each witness's testimony.
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), this Court said:
"We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury." 159 Miss. at 566, 132 So. at 564. [Emphasis added].
The jury was amply justified, from the evidence adduced in this case, in finding the defendant guilty beyond a reasonable doubt.
The appellant took the stand in his own defense and Mississippi Code Annotated Section 13-1-13 (1972), specifically provides that "Any witness may be examined touching his interest in the cause or his conviction of any crime, ..."
The district attorney had a right to cross-examine the appellant as to his previous convictions. This assignment of error is without merit. We note also that defense counsel failed to object to the district attorney's questions. This Court has long held that to preserve error concerning the admission of evidence at trial there must be contemporaneous objection. Brooks v. State, 242 So.2d 865 (Miss. 1971); Pepper v. State, 200 Miss. 891, 27 So.2d 842 (1946).
For the reasons stated, the conviction and sentence are affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SMITH, WALKER and BROOM, JJ., concur.