339 So.2d 1378 (1976)
Jack WIDEMAN
v.
STATE of Mississippi.
No. 49342.
Supreme Court of Mississippi.
November 16, 1976.
Bernard Gautier, Charles Parlin, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Vera Madel Speakes, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Jack Wideman was convicted of raping his twelve-year-old stepchild, Rosemary Hamilton, and was sentenced to serve a term of fifteen (15) years in the state penitentiary by the Circuit Court of Jackson County. On this appeal, he assigns the following errors committed by the trial court:
(1) The verdict of the jury is against the overwhelming weight of the evidence.
*1379 (2) The trial court erred in sustaining the State's objection to appellant's attempt to impeach the prosecutrix by showing that she falsely made similar accusations in the State of Alabama.
(3) The trial court erred in overruling appellant's motion for a mistrial after the State called appellant's wife to the witness stand and attempted to introduce testimony by her.
(4) The trial court erred in overruling appellant's motion for a mistrial because of prejudicial remarks made by the prosecuting attorney.
About 1:45 a.m. on the night of July 31, 1975, appellant went to the home of his brother where his wife and Rosemary were staying, and told them he wanted Rosemary to go with him to the police station for the purpose of explaining an accusation made by a neighbor that the child had stolen ten dollars ($10.00) from the neighbor. An argument ensued, and the brother made the entire family leave his home. Appellant, his wife and Rosemary left in appellant's car. After a while, the car stopped, appellant said it was out of gas, he removed an empty gas can from the car, and he and Rosemary started off on foot seeking gas. Mrs. Wideman remained in the vehicle. Rosemary testified that appellant took her to the home of his friend, Ray Solorzano, that he threatened her, that she was afraid of him and cried, that he forced her to have sexual relations with him, and that he then forced her to have sexual relations with Solorzano. In the meantime, appellant's wife started the car and drove around until she found appellant and Rosemary about 4:00 a.m. They were walking on the street near Solorzano's home.
Rosemary told her mother what had happened; she was taken to the police station, and then to the hospital where Dr. Allen examined her. He found mobile sperm in her vagina, indicating that she had intercourse within three hours previous to the examination. Dr. Allen also found that she had bruises on her left breast and a vaginal irritation. It was his opinion that Rosemary had engaged in sexual intercourse, but he was unable to determine whether with one or more persons.
Appellant denied that they had gone to the home of Solorzano, and denied that he had sexual relations with her. He stated that he was drunk, that he passed out on the front porch of a house, and that about two hours later Rosemary awakened him, appearing to be upset. Officer East testified that he saw appellant and Rosemary walking down the street in the vicinity of Solorzano's house, that he saw appellant again about 4:00 a.m. and that appellant was drinking, but was not drunk.

I.
Was the verdict of the jury against the overwhelming weight of the evidence?
Appellant principally urges on this assignment that the prosecutrix did not know the meaning of "intercourse" and that there was no penetration of her private parts. Rosemary testified that appellant made her take off her clothes, then he took off his clothes and "after he got done" he threatened her; that he forced her to have intercourse with him and that she understood what the word "intercourse" meant. She testified that appellant raped her and that Solorzano raped her.
The testimony of the prosecutrix was corroborated in the following respects:
(1) Dr. Allen testified that he found mobile spermatozoa in her vaginal tract, which indicated that she had sexual intercourse within the previous three hours.
(2) The doctor found bruises on her left breast and irritation of her vagina.
(3) Appellant and Rosemary left the car and went toward the Oasis Bar and toward Solorzano's house.
(4) Officer East saw appellant and Rosemary in the vicinity of Solorzano's house after they had left the car.
In Lang v. State, 230 Miss. 147, 87 So.2d 265 (1956), the prosecutrix, a twenty-year-old married woman, described the act as "after he got through" and the Court said: "It is not indispensable that the penetration *1380 be proved by the testimony of the prosecutrix; it may be established by circumstantial evidence." 230 Miss. at 158, 87 So.2d at 268.
In Lee v. State, 242 Miss. 97, 134 So.2d 145 (1961), the Court said:
"The appellant was indicted under Section 2358, Miss. Code of 1942, Rec., for forcibly ravishing the prosecutrix; and this Court has held in numerous cases that in a prosecution for rape under that statute the victim's evidence is sufficient to sustain a conviction without corroboration, if it is consistent with the surrounding circumstances and conditions shown by the evidence." 242 Miss. at 106, 134 So.2d at 149.
This Court affirmed a conviction of rape in Thornton v. State, 313 So.2d 16 (Miss. 1975), and stated:
"The facts being in dispute, it was the duty and responsibility of the jury to decide which witnesses to believe, and how much of each witness's testimony to believe, and what weight should be given to each witness's testimony.
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), this Court said:
`We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury.' 159 Miss. at 566, 132 So. at 564. [Emphasis added]." 313 So.2d at 18.
We are of the opinion that the evidence constitutes a question for the jury to determine whether or not the appellant raped the child, and that Assignment No. 1 is not well taken.

II.
Did the trial court err is sustaining the State's objection to appellant's attempt to impeach the prosecutrix by showing that she falsely made a similar accusation in the State of Alabama?
On cross-examination of the prosecutrix, appellant attempted to question her concerning a false accusation of sexual assault she had made against a man in Alabama approximately two years before. Objections to the testimony were sustained by the court, but no offer of the testimony was made by appellant in the absence of the jury, and the record does not indicate what she would have testified to.
Appellant called Mrs. Wideman (mother of the child and wife of the appellant) to the witness stand and thoroughly questioned her about the incident in Alabama, and she testified fully about the matter. Also, in response to questions by appellant, Mrs. Wideman testified about alleged sexual assaults against Rosemary while they lived in the State of Louisiana.
Other states have held that such testimony is competent for the purpose of impeaching the prosecutrix [State v. Izzi, 348 A.2d 371 (R.I. 1975); People v. Hurlbert, 166 Cal. App.2d 334, 333 P.2d 82 (1958)], but we find no reported case in Mississippi on the question. Although the point was not preserved because of the failure of appellant to make an offer of proof [Priest v. State, 275 So.2d 79 (Miss. 1973)], we are of the opinion that, if the trial court committed error in refusing to admit the testimony, which is not necessary for us to decide in this case, it was harmless error because of the testimony of Mrs. Wideman about the incident.

III.
Did the trial court err in overruling appellant's motion for a mistrial after the State called appellant's wife to the stand and attempted to introduce her testimony?
The State called Mrs. Marcine Wideman, wife of the appellant, to the stand, asked her name, and asked if she was the mother of Rosemary Hamilton, the prosecutrix. Objection was made by appellant and sustained by the court in the following language:
"BY THE COURT: Alright, [sic] the objection will be sustained. The law is *1381 that husbands cannot give testimony against wives, and wives on husbands, so the objection will be sustained."
The district attorney then made the following statement:
"BY MR. COLINGO: Very well. Thank you, ma'am, I'm sorry you can't testify."
Appellant contends that prejudicial error was committed in (1) calling the defendant's wife as a witness, and (2) making comments to the effect that she could not testify.
In Outlaw v. State, 208 Miss. 13, 43 So.2d 661 (1949), the district attorney made the following statements to the appellant before questioning him:
"The district attorney well knew that the wife was not a competent witness for he prefaced his questions to appellant with the statement, `You know that in a case like this your wife can't come in as a witness', to which appellant's counsel objected, but the district attorney immediately asked appellant `Would you have any objection to your wife being brought in here to testify', to which objection was again made, and the trial court compelled appellant to answer the question. This was further than the court went in any of the cases hereinafter mentioned." 208 Miss. at 18, 43 So.2d at 663-664.
This Court held that such conduct and statements constituted reversible error.
In Bell v. State, 244 Miss. 867, 147 So.2d 624 (1962), the Court held that the prosecutor's conduct in Outlaw was "in a taunting and reproachful manner, which can be construed as a criticism of the defendant for failure to put his wife on the stand or to let her testify." [244 Miss. at 870, 147 So.2d at 625] and stated the following:
"In the early case of Finklea v. State, 94 Miss. 777, 48 So. 1, the prosecuting attorney called the defendant's wife to the stand as a witness for the State, and, in the presence of the jury, caused the defendant to object to her as being incompetent to testify. The objection was promptly sustained by the trial court. On appeal this Court held that the prosecutor's act was improper, but it declined to reverse the case for that error. In Carter v. State, 99 Miss. 435, 54 So. 734, the State's counsel asked the defendant, on cross-examination, if his wife would testify and whether he would object if the State should call her as a witness. The defendant's objection was promptly sustained. This Court, while saying that these questions were highly improper, declined to denominate this occurrence as reversible error. Again, in Bryant v. State, 179 Miss. 739, 176 So. 590, which was a bigamy prosecution, the introduction of the first wife, who was sworn but withdrawn before she testified against the defendant, was held to be harmless error." 244 Miss. at 869, 147 So.2d at 625.
In Merritt v. State, Miss., 339 So.2d 1366, handed down on November 2, 1976, this Court held that the wife is a competent witness in the prosecution of her husband for crimes involving personal violence against their child. It is not necessary to decide here whether that principle extends to a stepchild of the husband for the reason that after the State rested, Mrs. Wideman was called to the stand as a witness for the appellant, and she testified at length on direct and cross-examination. The record does not reflect that appellant felt compelled to call his wife on account of the conduct of the prosecuting attorney. Thus, if error was committed, it became harmless when the wife testified on behalf of appellant.

IV.
Did the trial court err in overruling appellant's motion for a mistrial after alleged prejudicial statements were made in the prosecuting attorney's argument?
During his argument the prosecuting attorney said:
"... I don't think, that as long as I have prosecuted, I have seen a situation that has made me more sick to my stomach than what I have seen here today. Now I am going to tell you why. I've got four little daughters, two of which are *1382 the same age as this little lady over here, and I think about them, and I love them, and I want to protect them."
Appellant objected, the court sustained the objection and directed the jury to disregard the remarks. The prosecuting attorney then said:
"Now the only thing that I regret, as a prosecutor, is that the law doesn't provide a noose in which to put this man's neck in.
* * * * * *
You let him out and he's going to do it again. .. ."
Objections were made again by appellant to those statements, and they were sustained by the court.
In Holifield v. State, 275 So.2d 851 (Miss. 1973), the prosecuting attorney stated in his closing argument that the law enforcement officers were "`trying to protect you, next time it might be your house that is burglarized.'" 275 So.2d at 856. The Court held that the remark, while improper and should not have been made, was not reversible error and that under the circumstances, the action of the trial court in sustaining defense counsel's objection to the remark was sufficient to prevent reversible error.
In Herrin v. State, 201 Miss. 595, 29 So.2d 452 (1947), the district attorney stated in his closing argument that the jury could acquit the defendant of the charge and let him go free, and if the jury did so, he may kill another person, and the next time it might not be a colored person. Objection was sustained, but the motion for mistrial was overruled. The Court held that while the remarks of the district attorney constituted an appeal to race prejudice, and should not have been made, the action of the trial court in promptly sustaining the objection was sufficient to prevent overruling the motion for a mistrial from constituting reversible error under the facts and circumstances of the case.
The Court said in Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216 (Miss. 1969):
"The appellant next contends that the attorney for the appellees indulged in the `golden rule' argument. Since the court sustained the objection thereto by the appellant, we are of the opinion that no prejudicial error resulted therefrom and that the appellant's rights were adequately protected." 224 So.2d at 224.
The statements of the prosecuting attorney were improper and should not have been made. However, while we again admonish prosecuting attorneys of the dangers of reversal in going outside the record in their arguments, we do not think that the remarks in this case, under all the facts and circumstances, constitute reversible error.
For the reasons stated, the case is affirmed.
AFFIRMED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.